UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CR408-231 |
| | ) | |
| BERNARD McCRAY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant, who is charged with sexual exploitation of children and possession of child pornography, has filed a motion to suppress images found in his mobile phone at the time of his arrest. (Doc. 25.) During the evidentiary hearing held on October 30, 2008, the government offered testimony from Officer Chester Balmer and Detective Frank Chisholm of the Savannah-Chatham Metropolitan Police Department ("SCMPD"). The defendant did not testify. For the following reasons, defendant's motion to suppress should be **DENIED**.

On May 28, 2008, Officers Balmer and Pittman were called out to the Chelsea Apartments, located on Skidaway Road, in response to

reports of sexual activity occurring in a silver pickup truck. Upon arrival, the officers spotted a silver Dodge pickup truck with two occupants sitting in the passenger compartment. Defendant McCray exited from the driver's side of the truck when he saw the police approaching. The passenger, a young female, remained in the truck. Officer Pittman approached McCray, asked him to produce some identification, and spoke with him while Officer Balmer went to the pickup to speak with the female passenger. As Officer Balmer approached the passenger side of the truck, he recognized the passenger as J.W., a fourteen-year-old-girl who lived in the area. As she exited the vehicle at the officer's direction, the girl appeared nervous and said that she wanted to go home. Balmer asked her what had been going on. J.W. told Balmer that before the police arrived she was sitting on McCray's lap, kissing him, and "playing with his thing." Balmer asked her if McCray knew how old she was, and she said that he did. He asked her why she did it. She said that McCray gave her money and food. After speaking with the girl for some two minutes, Balmer placed her in a police cruiser, as he was afraid she would leave if left unattended.

Balmer then advised Officer Pittman of his conversation with J.W. Because McCray had produced only a Georgia I.D. card when Pittman sought proof of his identity, Balmer instructed Pittman to ask McCray for his driver's license.[1] McCray advised that he had recently been charged with a D.U.I. offense and was driving on a permit that was in a small pouch located inside his pickup truck. Pittman then asked for and obtained McCray's consent to enter the truck to retrieve the driving permit (the exact location of which McCray had not specified). While

---

[1] Officer Balmer testified that immediately after he secured J.W. in a police cruiser, McCray was advised that he was under investigative detention, patted down, and placed in the back of another patrol car without handcuffs being applied at that point. Balmer recollected that McCray was not advised that he was under arrest or placed in handcuffs until after the discovery of the crack cocaine in his pickup truck. On cross-examination, defense counsel referred Balmer to earlier testimony during a state preliminary hearing that seemed to suggest that McCray was arrested as soon as Officer Balmer finished speaking with J.W. and learned that McCray had engaged in sexual activity with a minor. (Def's Ex. 1.) Thus, McCray contends that he was under arrest at the time the officer sought his consent to search the pickup and suggests that his consent was invalid because the officers did not first advise him of his Miranda rights before seeking his consent.

The Court tends to credit Officer Balmer's testimony at the suppression hearing, which was more focused on the exact chronology of events than was the questioning at the state preliminary hearing (although the record remains somewhat unclear as to exactly when McCray was first handcuffed and placed in a patrol car). The precise chronology is unimportant, however, for even if McCray's version of the events is accepted, the officers were certainly entitled to arrest and handcuff a person they reasonably believed to have induced a minor to perform a sexual act. Nor would McCray profit from a finding that consent to search the pickup was obtained only after he was formally arrested. As discussed below, McCray's consent was not required to search the vehicle, for it is well settled that officers are free to search a motorist's vehicle incident to his arrest. Further, officers may seek consent to search from an arrestee without advising him of his right to refuse consent or administering the warnings mandated by Miranda v. Arizona, 384 U.S. 436 (1966). Schneckloth v. Bustamonte, 412 U.S. 218, 231, 246-49 (1973).

looking for the permit, Officer Balmer found two white rocks of what appeared to be crack cocaine in the truck's ashtray. Officer Balmer advised McCray that he was under arrest for the drugs found in his pickup, but the officer elected to wait until he could speak with police detectives before charging McCray with sexual molestation of a minor.

After the arrest, McCray's truck was inventoried, as required by SCMPD policy. Officer Pittman found a Polaroid photograph of a naked adult female and showed it to Balmer. Upon seeing the picture, it occurred to Balmer that McCray might have used the camera feature of his mobile phone to take photos of J.W. that had evidentiary value. In addition, he believed that there may be indicia of drug dealing stored on the phone, as he was aware that drug dealers regularly take pictures of their drugs, weapons, and cash proceeds. Accordingly, Officer Balmer keyed the mobile phone's photo directory and looked through approximately 10-12 of McCray's saved images. Several of the photos were lewd images of J.W.

Detective Frank Chisholm interviewed J.W. on two occasions after the arrest. During the first interview, she told Chisholm that she had been "dating" McCray for over a year-and-a-half, which meant she had

been seeing him since she was 12 years old. She stated that McCray knew she was in middle school, but she did not explicitly say that he knew her age. She told Chisholm that the relationship was sexual and that he took several pictures of her. Specifically, she indicated that the pictures on the camera phone had been taken eight months ago. After that interview, Detective Chisholm sought and obtained a search warrant for the mobile phone. After viewing the photos, he called J.W. in for a second interview, the details of which were not discussed at the suppression hearing.

The only question before the Court is whether the photographs discovered in the camera phone should be suppressed. McCray contends that the search of the phone was improper, as it was conducted without a warrant.[2] (Doc. 25.)

---

[2] In his initial brief, McCray also suggested that he was arrested without probable cause and that the incriminating evidence was obtained "without jurisdiction; without the presence of counsel; and without an intelligent or knowing waiver of counsel," and without his first being informed of his Miranda rights. (Doc. 25 at 1.) Except for the Miranda argument, which was further referenced at the evidentiary hearing, McCray has not preserved these arguments for review. This Court's local rules require criminal motions to "cite[] supporting authorities." L. Cr. R. 12.1. McCray's motion provides no citation or support for his contention that the officers were "without jurisdiction" or that he was entitled to the presence of counsel during his encounter with the officers. As McCray has not developed these arguments, they are deemed abandoned. Moreover, Miranda is simply inapplicable on these facts. See supra note 1.

**ANALYSIS**

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973). Such searches are reasonable not only because of the need to disarm the arrestee of any weapons that might be used to resist arrest or effect his escape, but also because of the need "'to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.'" Id. at 226 (quoting Chimel v. California, 395 U.S. 752, 763 (1969)); Preston v. United States, 376 U.S. 364, 367 (1964) ("Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime."); Carroll v. United States, 267 U.S. 132, 158 (1925) ("When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution.").

Further, both the Supreme Court and the lower federal courts have repeatedly recognized the right of the police to open and inspect papers, wallets, address books, and similar items seized from an arrestee in order to determine whether they have evidentiary value.  Robinson, 414 U.S. at 223-24, 236 (officer was entitled to inspect crumpled cigarette package found on arrestee's person, and thus heroin capsules found in the package were admissible); United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (officers were entitled to search wallet and papers found on defendants' persons incident to their arrest); United States v. McFarland, 633 F.2d 427, 429 (5th Cir. 1980) (officer was entitled to read a piece of notebook paper removed from defendant's shirt pocket incident to his arrest); United States v. Castro, 596 F.2d 674, 677 (5th Cir. 1979) (unfolding and reading of paper found in defendant's wallet was valid search incident to his arrest); United States v. Rodriguez, 995 F.2d 776, 778 (7th Cir. 1993) (photocopying contents of address book was a valid search incident to arrest).  As one commentator has noted, in applying Robinson, the lower courts "have deemed evidentiary searches of an arrested person to be virtually unlimited."  3 Wayne R. LaFave, Search and Seizure § 5.2(c), at 110 (4th ed. 2004).

These principles have been extended to electronic storage devices found on a defendant at the time of his arrest. For instance, courts have regularly held that a police officer may lawfully search a pager's memory incident to arrest. See United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996) ("law enforcement officers have the authority to immediately 'search' or retrieve, incident to a valid arrest, information from a pager in order to prevent its destruction as evidence"); United States v. Diaz-Lizaraza, 981 F.2d 1216, 1222-23 (11th Cir. 1993) (agents who discovered beeper in truck incident to defendant's arrest, and who had probable cause to believe that the beeper was connected to criminal activity, acted reasonably in inserting batteries into the beeper and calling it to see if it would ring when the suspect's beeper number was dialed); United States v. Reyes, 922 F. Supp. 818, 833 (S.D.N.Y. 1996) (memory of pager seized incident to arrest could be accessed to obtain numbers and messages); United States v. Lynch, 908 F. Supp. 284, 287-88 (D. V.I. 1995) (officers entitled to search pagers seized incident to defendant's arrest); United States v. Chan, 830 F. Supp. 531, 535-36 (N.D. Cal. 1993) (activation of pager's memory valid as a search incident to defendant's arrest). More recent cases have treated mobile telephones and digital cameras in the

same manner. United States v. Finley, 477 F.3d 250, 259-60 (5th Cir. 2007) (analogizing mobile phone to container and finding search incident to arrest valid where police searched phone for evidence of narcotics use and drug trafficking); United States v. Young, 278 F. App'x 242, at 245-46 (4th Cir. 2008) (permitting police to retrieve text messages from a mobile phone during search incident to arrest); United States v. Ayalew, 563 F. Supp. 2d 409, 416 (N.D.N.Y. 2008) (permitting agent to search contents of digital camera incident to arrest but finding that camera not technically a container); United States v. Curry, 2008 WL 219966, at *8-10 (D. Me. Jan. 23, 2008) (permitting search incident to arrest of mobile phones to find evidence of drug trafficking); United States v. Zamora, 2006 WL 418390, at *4 (N.D. Ga. Feb. 21, 2006) (permitting search of mobile phone incident to arrest where agents reasonably believed that evidence within it could be destroyed through delay); United States v. Brookes, 2005 WL 1940124, at *3 (D. V.I. June 16, 2005) (permitting search of mobile phone call records incident to arrest); United States v. Cote, 2005 WL 1323343, at *6 (N.D. Ill. May 26, 2005) (allowing officers to search mobile phone call log, phonebook, and wireless web inbox incident to arrest); see also United States v. James, 2008 WL 1925032, at

\*4 (E.D. Mo. Apr. 29, 2008) (noting that search of mobile phone requires warrant unless made pursuant to warrant exception, such as a search incident to arrest); United States v. Park, 2007 WL 1521573, at \*7-9 (N.D. Cal. May 23, 2007) (distinguishing Finley when the search of the cell phone occurred at the station, hours after the initial arrest, but still indicating that a prompt search incident to arrest would be permissible).

In this case, the officers seized McCray's cell phone from his pocket after developing probable cause to believe that he had enticed a 14-year-old girl to engage in a sexual act.[3] Initially, the phone was placed on the tail gate of McCray's pickup truck. But after the discovery of the crack cocaine and the Polaroid photograph depicting a naked adult female, Officer Balmer concluded that the phone's camera function might contain evidence of either drug trafficking and/or molestation of a minor. Accordingly, he briefly reviewed the images stored in the phone's memory. After finding lewd images of J.W. on the phone, he secured the

---

[3] McCray contends that he was under arrest at this time, while Officer Balmer testified at one point that defendant was simply under investigative detention when he was initially frisked and placed in a patrol car. (Balmer stated that, as a security measure, he always confiscates cell phones before placing anyone--detainees or arrestees--in his patrol car in order to prevent them from summoning others to the scene.) Under either scenario, it was proper for the officer to seize the cell phone and any other personal effects from a person whom the officer reasonably believed to have just committed a serious crime.

phone as evidence and for further review by SCMPD detectives, who secured a warrant before conducting a more comprehensive search of the phone.

As the Fifth Circuit held in Finley, "[t]he permissible scope of a search incident to a lawful arrest extends to containers found on an arrestee's person." 477 F.3d at 260. A cell phone, like a beeper, is an electronic "container," in that it stores information that may have great evidentiary value (and that might easily be destroyed or corrupted). While such electronic storage devices are of more recent vintage than papers, diaries, or traditional photographs, the basic principle still applies: incident to a person's arrest, a mobile phone or beeper may be briefly inspected to see if it contains evidence relevant to the charge for which the defendant has been arrested.[4]

---

[4] At the evidentiary hearing, government counsel argued that a cell phone is just like any other container, suggesting that such a device--no matter how much stored data it contains--might be subjected to an exhaustive search incident to arrest, even where there are no grounds to suspect that information on the phone would be pertinent to the crime under investigation. Some commentators have questioned or criticized such an interpretation of the search-incident-to-arrest doctrine. See, e.g., Adam M. Gershowitz, The iPhone Meets the Fourth Amendment, 56 UCLA L. Rev. 27 (2008); Bryan Andrew Stillwagon, Bringing an End to Warrantless Cell Phone Searches, 42 Ga. L. Rev. 1165 (2008). In this case, Officer Balmer briefly inspected McCray's cell phone to see if it contained images related to the charges for which he had been arrested, which is very much akin to thumbing through an address book or examining other papers seized from an arrestee. This case, therefore, does not present the question of whether a cell phone (a kind of computer capable of storing

For all of the reasons explained above, McCray's motion to suppress should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this <u>5th</u> day of December, 2008.

/s/ G. R. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

vast amounts of data) may be subjected to a comprehensive search incident to a defendant's arrest for a simple traffic violation. The Court, therefore, need not wrestle with the legal implications of such troublesome facts.